UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK COLSTON,

       Plaintiff,                        CIVIL ACTION NO. 07-14759

       v.                               DISTRICT JUDGE MARIANNE O. BATTANI

DORENE MATTHEWS,              MAGISTRATE JUDGE VIRGINIA M. MORGAN

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I. Introduction**

    This is a *pro se* 42 U.S.C § 1983 action in which the plaintiff, an inmate in the custody of the Michigan Department of Corrections (MDOC), alleges that the defendant retaliated against him for exercising his rights under the First Amendment of the United States Constitution. The matter comes before the court on Defendant's Motion to Dismiss (D/E # 9) alleging improper venue. Plaintiff filed a response to defendant's motion (D/E #12). For the reasons discussed below, this Court recommends that defendant's motion be **GRANTED IN PART** and that this case be transferred to the United States District Court for the Western District of Michigan.

**II. Background**

    On November 6, 2007, plaintiff filed this lawsuit in the United States District Court for the Eastern District of Michigan (D/E #1). In that complaint, plaintiff alleges that, while

-1-

incarcerated at the Ojibway Correctional Facility (in the Western District of Michigan) in January 2007, he sent a medical form to health services requesting counseling. (Complaint, ¶ 4) Defendant, a social worker employed at that facility, scheduled a counseling session for plaintiff. (Complaint, ¶ 9) At the counseling session, plaintiff told defendant he had been sexually assaulted by a correctional officer named Gabriel Cramer from October 2004 to March 2005 while incarcerated in the Jackson Cooper Correctional Facility (JCCF) and that he had been retaliated against because of a previous lawsuit filed against correctional officials while he was incarcerated at the Hiawatha Correctional Facility (HCF) (also in the Western District of Michigan). (Complaint, ¶¶ 10, 17, 19) The retaliation plaintiff allegedly suffered at HCF included a correctional official making a false claim that plaintiff had made romantic statements to her. (Complaint, ¶ 19) Defendant told plaintiff that she believed him and that he could trust her. (Complaint, ¶ 18, 23) She also warned him that some of the correctional officials were prejudiced against African-American inmates and that plaintiff should not trust correctional officials. (Complaint, ¶¶ 25-26)

Plaintiff further alleges that on February 2, 2007, plaintiff again sent a medical form requesting counseling. (Tr. 29) Defendant subsequently scheduled plaintiff for a counseling session on February 27, 2007. (Complaint, ¶ 29) At that session, plaintiff complained that his physical symptoms resulting from stress had worsened, and that he felt hopeless and powerless. (Complaint, ¶¶ 30, 33) Defendant advised plaintiff that, considering what plaintiff had suffered, his feelings were normal and she again warned plaintiff that some correctional officials would be

reluctant to help him because of racism. (Complaint, ¶¶ 31-32) Defendant also promised to scheduled plaintiff for another counseling session for the following week. (Complaint, ¶ 34)

On March 9, 2007, plaintiff sent defendant a letter asking her why she had failed to schedule him for another appointment. (Complaint, ¶ 35) On March 25, 2007, plaintiff sent a medical form to health care services complaining of headaches, nausea, insomnia, and extreme stress. (Complaint, ¶ 36) In response to that medical form, plaintiff was seen by a nurse. However, the nurse stated that she could not help plaintiff because she was not trained in the area of mental health. The nurse promised to speak with defendant and she advised plaintiff to send defendant another medical form. (Complaint, ¶¶ 37-40)

Plaintiff sent defendant another medical form requesting counseling and defendant scheduled him for a session. (Complaint, ¶¶ 41-42) At that session, plaintiff told defendant he was about to have a mental breakdown and that his physical symptoms have worsened. (Complaint, ¶ 45) Plaintiff also told defendant that he needed counseling because it was the only time he felt safe talking about the retaliation he was suffering, and he asked defendant to contact the Michigan State Police about the sexual assault he suffered at JCCF. (Complaint, ¶¶ 46, 51) Defendant reminded plaintiff that she had warned him about the retaliation he would face and she agreed to contact the Michigan State Police. (Complaint, ¶¶ 49, 52) Defendant also advised plaintiff that correctional officials wanted her to decrease plaintiff's sessions to once or twice a month. (Complaint, ¶ 53) After plaintiff stated that he was suffering panic attacks and loss of sleep because of the retaliation and the sexual assault, defendant agreed to counsel him once a week. (Complaint, ¶¶ 54-55)

On April 30, 2007, plaintiff sent defendant a request for weekly counseling. (Complaint, ¶ 55) Defendant scheduled plaintiff for a counseling session on May 4, 2007. (Complaint, ¶ 57) At that session, defendant informed plaintiff that correctional officials told her to stop providing plaintiff with counseling because they did not want plaintiff to have a record regarding the emotional problems he suffered as a result of the retaliation. (Complaint, ¶ 58) Defendant also informed plaintiff that correctional officials wanted her to write a negative mental health report about plaintiff in an effort to discredit him. (Complaint, ¶ 59) Plaintiff reminded defendant of his suffering and, while defendant acknowledged it, she stated that she did not want to make enemies with the people she worked with. (Complaint, ¶¶ 60-61) Defendant advised plaintiff that no correctional officers were going to assist him and that she would not contact the Michigan State Police. (Complaint, ¶¶ 63-64)

Plaintiff alleges that on May 5, 2007, defendant filled out a MDOC Mental Health Progress Note with respect to plaintiff in which she made false statements regarding plaintiff's mental health status. (Complaint, ¶¶ 66-68) Defendant also failed to schedule plaintiff for another counseling session. (Complaint, ¶ 70) Plaintiff sent several medical forms requesting counseling sessions, but he received no response. (Complaint, ¶ 70)

On or about June 4, 2007, plaintiff spoke with defendant outside the prisoners' school building. (Complaint, ¶ 71) Plaintiff asked defendant why she had not scheduled him for a counseling session and she replied that she had not received his requests. (Complaint, ¶¶ 71-72) Plaintiff also asked defendant why she put false information in plaintiff's Mental Health Progress Note and she replied that correctional officials told her to do so in order to discredit

plaintiff. (Complaint, ¶¶ 73-74) Defendant told plaintiff she would schedule him for a session on June 19, 2007, so they could discuss the false information. (Complaint, ¶ 76) Defendant also told plaintiff that he should send any further medical forms to her through another prisoner in order to ensure that she received them. (Complaint, ¶ 77)

Plaintiff subsequently sent medical forms to defendant via another prisoner, but no counseling session was scheduled. (Complaint, ¶¶ 78-79) Plaintiff then sent a medical form directly to defendant and defendant scheduled plaintiff for a counseling session. (Complaint, ¶¶ 80-81)

On June 20, 2007, defendant instructed plaintiff to follow her into her office, where a correctional officer was waiting for them. (Complaint, ¶ 82) Defendant informed plaintiff that the correctional officer had sworn to keep plaintiff's concerns confidential. (Complaint, ¶ 84) Defendant also informed plaintiff that she did not want plaintiff speaking with her in front of the school building or sending medical forms via another prisoner. (Complaint, ¶ 85) Defendant then accused plaintiff of attempting to become romantically involved with her. (Complaint, ¶ 86) Plaintiff replied that he had only been following defendant's instructions and that he had no romantic interest in her. (Complaint, ¶¶ 88-89) Defendant advised plaintiff that she was allowing other correctional officials to read the information plaintiff was sending her and that plaintiff could either discuss his problems in front of the correctional officer or leave. (Complaint, ¶¶ 91-92) Plaintiff then told defendant that she knew what plaintiff had gone through and why he did not feel comfortable speaking in front of the correctional officer. (Complaint, ¶ 93) Plaintiff left the counseling session. (Complaint, ¶ 94)

In the "Claim of Relief" section of plaintiff's complaint, he stated:

> As alleged above Defendant Matthews, (sic) behavior has caused and continues to cause Plaintiff mental anguish, a false Michigan Department of Corrections, Mental Health Progress Note, has been inserted in his prison files to discredit the statements he made against Correctional Officials for retaliating against him, as the result of the previous law suit he filed against Correctional Officials (sic) Gabrial (sic) Cramer for sexually assaulting him, he is being denied his right to an administrative hearing to challenge the false information stated within the mental health progress note, the false mental health progress note will arbitrarily increase his parole guide line (sic) score.

On January 9, 2008, defendant filed a motion to dismiss under Fed. R. Civ. Pro. 12(b)(3) (D/E #9). In that motion, defendant argues that this action should be dismissed because venue is improper and because no evidence suggests that the interests of justice require that this case be transferred to the proper venue instead of being dismissed.

On January 28, 2008, plaintiff filed his response to defendant's motion to dismiss (D/E #12). In that response, plaintiff argues that the Eastern District of Michigan is the proper venue for this action because defendant participated in a conspiracy to intimidate and retaliate against plaintiff and that retaliatory conspiracy originated in the Eastern District of Michigan.

**III. Discussion**

Defendant brings this motion pursuant to Fed. R. Civ. 12(b)(3) and asserts the defense of improper venue. In the motion, defendant argues both that plaintiff's chosen venue is improper and also that plaintiff's complaint should be dismissed.

**A. Venue**

Although the purpose of the venue requirements is to protect a defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial, see Leroy v. Great Western United Corp., 443 U.S. 173, 183, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), the proper venue for a civil action is governed by statute. Pursuant to 28 U.S.C. § 1391(b):

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

In this case, federal jurisdiction is not based on diversity of citizenship and, while plaintiff filed his complaint in the Eastern District of Michigan, it is not the proper venue for his claims under any of the three grounds for venue found in 28 U.S.C. § 1391(b).

With respect to the first basis for venue found in § 1391(b), the Eastern District is not a proper venue in light of defendant's residence. There is only one defendant in this case and, as acknowledged in the complaint, she is employed at the Ojibway Correctional Facility. (Complaint, p. 2) Defendant's official residence is in the same judicial district as the Ojibway Correctional Facility. See Bay County Democratic Party v Land, 340 F. Supp. 2d 802, 808 (E.D. Mich. 2004) (Lawson, J.) ("The prevailing view is that suits against government officials generally are proper in the judicial district in which those officials perform their duties.") (citations omitted). The Ojibway Correctional is in Gogebic County and Gogebic County is

within the jurisdiction of the Western District of Michigan, Northern Division. W.D. Mich. L. Civ. R. 3.2.

With respect to the second basis for venue found in § 1391(b), the Eastern District is not a proper venue in light of plaintiff's specific claims against defendant. Plaintiff argues that a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Michigan, but that does not appear to be accurate. While plaintiff alluded to prior wrongs committed against him while he was incarcerated in the Eastern District of Michigan, defendant is not alleged to have played a role in them. Defendant first met plaintiff while he was incarcerated in the Western District of Michigan and the constitutional violations she is alleged to have committed likewise occurred in the Western District. Plaintiff can, at most, claim that some of the protected activities for which he was retaliated against occurred in the Eastern District. Moreover, while plaintiff argues in his response that defendant was part of a conspiracy originating in the Eastern District, he only brought this action against defendant and the action is based solely on her actions. Therefore, considering plaintiff's actual claims, it is only in the Western District that a substantial part of the events giving rise to his claim occurred and venue is not properly in the Eastern District on that basis.

With respect to the third basis for venue found in § 1391(b), the Eastern District is not a proper venue in light defendant's location and where a substantial part of the events giving rise to plaintiff's claim occurred. As noted above, the third basis for venue found in § 1391(b) provides that an action may be brought in "a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. §

1391(b). As discussed above, the only defendant in this case resides in the Western District and a substantial part of the events giving rise to plaintiff's claim occurred there. Consequently, pursuant to § 1391(b), venue is proper in the Western District of Michigan and plaintiff's action cannot be brought in Eastern District of Michigan on the basis that there is no district in which the action could otherwise be brought, even assuming *arguendo* that defendant could be found in the Eastern District of Michigan.

### B. Dismissal or Transfer

When, as here, a district court is not the proper venue for an action, 28 U.S.C. § 1406(a) provides the district court with two options:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Whether to dismiss a case or transfer it is a matter of discretion. Kerobo v. Southwestern Clean Fuels Corp., 285 F.3d 531, 533 (6th Cir. 2002); First of Michigan Corp. v. Bramlet, 141 F.3d 260, 262 (6th Cir. 1998). However, while "the interest of justice" is not a definite standard, Cote v. Wadel, 796 F.2d 981, 985 (7th Cir. 1986), the "interest of justice" generally instructs courts to transfer cases to the appropriate judicial district, rather than dismiss them. Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-67, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). Transferring a case is keeping with the ultimate goal of allowing cases to be decided on their substantive merits, as opposed to being decided on procedural grounds. See Goldlawr, Inc., 369 U.S. at 466-67. However, a case may be dismissed where the claims are frivolous. See, e.g., Fish v. Murphy,

No. 01-3601, 22 Fed. Appx. 480, 481-482 (6th Cir. October 26, 2001); Caldwell v. Medical Council of California, No. 96-5920, 113 F.3d 1234 (6th Cir. May 6, 1997) (table).

In this case, "defendant maintains that there is no evidence that mandates a finding that the interests of justice require a transfer" (Defendant's Brief in Support of Motion for Summary Judgment, p. 3), but she offer no basis for going against the general rule that courts should transfer cases to the appropriate judicial district, rather than dismiss them. Nor does defendant argue that plaintiff's claim is frivolous or that she would suffer any prejudice from a transfer, in contrast to the *pro se* plaintiff clearly being prejudiced by a dismissal. Moreover, requiring plaintiff to start over by refiling his case against the dismissed defendant in the Western District of Michigan serves no useful purpose. Given all those factors, plaintiff's claim should be transferred to the Western District of Michigan pursuant to 28 U.S.C. § 1406(a) rather than dismissed.

**IV. Conclusion**

For the reasons discussed above, this Court recommends that defendant's motion be **GRANTED IN PART** and that this case should be transferred to the United States District Court for the Western District of Michigan.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v.

Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

> s/Virginia M. Morgan
> Virginia M. Morgan
> United States Magistrate Judge

Dated: March 28, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on March 28, 2008.

> s/Jane Johnson
> Case Manager to
> Magistrate Judge Virginia M. Morgan